**John E. LETT and Winifred B. Lett, as parents of Diane C. Lett, Petitioners,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–1343 V.**

United States Court of Federal Claims.

Oct. 27, 1997.

William P. Ronan, Overland Park, KS, for petitioners.

Glen A. MacLeod, with whom were Frank W. Hunger, Assistant Attorney General, John Lodge Euler and Gerard W. Fischer, Washington, DC, for respondent.

## OPINION and ORDER

TURNER, Judge.

Petitioners seek relief under the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. § 300aa–10 to 300aa–16, for injuries suffered by their daughter, Diane C. Lett. The petition alleges that Diane suffered compensable injuries as a result of a diphtheria-pertussis-tetanus (DPT) vaccination. On June 6, 1997, pursuant to Vaccine Rule 10, Special Master E. LaVon French issued a decision that the petition should be dismissed because the petitioners failed to submit corroborating evidence of an injury as required by § 300aa–13(a)(1) of the Vaccine Act. The

case now stands on petitioners' motion filed July 7, 1997 for review of the special master's decision. We conclude that the master's decision must be affirmed.

## I

The pivotal issue is whether the petitioners have produced the corroborating evidence required by the Vaccine Act for compensation. In resolving this issue, we assume the credibility and good faith of the petitioners.

The Vaccine Act requires that a petitioner submit with the petition an affidavit and supporting documentation regarding the administration of a vaccine and a vaccine-related injury for a court to determine eligibility. § 300aa–11(c), 300aa–13(a)(1)(A). In a case such as this one, alleging residual seizure disorder following the administration of a DPT vaccine, a petition must document that the injured person:

(1) received a DPT vaccine, § 300aa–11(c)(1)(A);

(2) received the vaccine in the United States, § 300aa–11(c)(1)(B);

(3) suffered a seizure within three days of receiving the vaccine and suffered at least two more seizures "unaccompanied by fever or accompanied by fever of less than 102 degrees Fahrenheit" within one year of receiving the vaccine, § 300aa–11(c)(1)(C)(i), 300aa–14(a) & (b); or suffered from residual seizure disorder actually caused by the vaccine, § 300aa–11(c)(1)(C)(ii)(II);

(4) sustained vaccine-related effects which lasted longer than six months and led to "unreimbursable expenses ... greater than $1,000," § 300aa–11(c)(1)(D); and

(5) has not previously recovered for such injury, § 300aa–11(c)(1)(E).

The petition must include relevant hospital and health records. § 300aa–11(c)(2). If any records are unavailable, the petition should identify them and explain the reasons for their unavailability. § 300aa–11(c)(3).

Ultimately, the petitioner must substantiate the occurrence of a compensable, vaccine-related injury with independent evidence. Section 300aa–13(a)(1) provides that a special

master may not award compensation "based on the claims of [a] petitioner alone, unsubstantiated by medical records or by medical opinion."

Although evidence of each and every element required for eligibility and compensation must be provided and eventually proved by a "preponderance of the evidence," § 300aa–13(a)(1)(A) & (B), the foundation of every petitioner's case is proof that the recipient of a vaccine suffered injury resulting from administration of the vaccine. Under the Vaccine Act, this fundamental element may be established in either of two ways. First, it may be established through the use of the Vaccine Injury Table. § 300aa–11(c)(1)(C)(i). Specifically, a petitioner may prove that the vaccine recipient suffered certain symptoms within a statutorily prescribed time. *Id.*

██ In this case, to prove a table injury, petitioners must prove that Diane suffered a seizure within three days of receiving the vaccine *and* that she suffered at least two more seizures "unaccompanied by fever or accompanied by fever of less than 102 degrees Fahrenheit" within one year of receiving the vaccine. § 300aa–14(a), (b)(2)(B). If this is established, the fact that the vaccine caused the injury is "presumed." *Bunting v. Secretary of the Dep't Health and Human Servs.*, 931 F.2d 867, 872 (Fed.Cir.1991). Alternatively, a petitioner may prove through other evidence (not prescribed by the statute) that a vaccine actually caused an injury. § 300aa–11(c)(1)(C)(ii)(II). Under either method, a petitioner must corroborate the claims with testimony of one or more other witnesses, "medical records or medical opinion"; the special master may not compensate a petitioner based on his claims alone. § 300aa–13(a)(1).

## II

Although no findings of fact have been made, the following is generally undisputed. Diane was born on November 15, 1968. W.B. Lett Aff., 8/26/92, ¶ 2. Diane is the product of a full term, uncomplicated pregnancy. Pet. at 8. On March 5, April 9 and May 21, 1969, and on June 9, 1970, Diane received DPT vaccinations in Whittier, California. Pet. at 25.

It is also undisputed that Diane suffered from certain health problems. At one month of age, Diane suffered from, and was later treated for, a heart murmur. *Id.* As a result, on January 29, 1970, Diane was seen by a cardiologist who reported her growth to be "more than adequate" but found that the heart murmur had persisted. Pet. at 28. The cardiologist made a finding of "pulmonary valve stenosis of a relatively mild degree" and ordered "[n]o restrictions of activity." *Id.* at 28–29. The next available health records show that Diane was developing slowly. E.g., Pet. at 25 (10/19/71 letter from pediatrician), 30 (5/18/71 letter from cardiologist). Diane was diagnosed at the age of 42 months "as having mental retardation." Pet. at 8.

The following assertions are undocumented and disputed. Diane's parents claim that after the June 9, 1970 vaccination, Diane suffered her first seizure: "Diane woke the morning after receiving the fourth [DPT] shot ... screaming violently with her legs drawn up to her chest and her hands clutching her chest." Pet. at 67. Mrs. Lett also claims that she "observed jerking movement of her arms and legs." W.B. Lett Aff., 8/24/92, ¶ 5. Fearing that her child was having a heart attack, Mrs. Lett took Diane to the emergency room at Whittier Hospital. Pet. at 67. Diane was treated, not at the hospital, but at the office of Dr. Barnett, the hospital's doctor on duty. *Id.* Dr. Barnett diagnosed Diane's episode as a bronchial attack. *Id.*

The Letts also assert that Diane experienced two or more seizures within one year after administration of the vaccine and that such seizures were unaccompanied by fever or accompanied by fever of less than 102 degrees Fahrenheit. W.B. Lett Aff., 8/24/92, ¶ 8. Finally, they assert that the DPT vaccine caused Diane to develop residual seizure disorder. Amend. Pet. ¶ 1(d).

## III

On September 25, 1990, the petitioners, filed a "Petition for Vaccine Compensation" under the Vaccine Compensation Act, 42

U.S.C. § 300aa–10 to 300aa–16.[1] The petition included all available medical records, identified records that were unavailable and the efforts that were made to locate them, and included an affidavit by the petitioners describing Diane's injuries and resulting damages. None of the records supported the petitioners' claim that Diane had experienced seizures. The records of the emergency room visit and the records of Dr. Barnett were never found.

The petitioners sought to corroborate their claims with the opinion of Mark R. Geier, M.D., a specialist in obstetrical genetics. Upon review of the petition, the medical records, and affidavits of the petitioners, Dr. Geier concluded that Diane suffered from residual seizure disorder, that the first seizure took place within three days of the June 9, 1970 vaccination, that Diane's symptoms "fit[ ] the category of residual seizure disorder" in accordance with the Vaccine Injury Table, and that the vaccine caused Diane's injury. Geier Aff., 9/4/92, ¶¶ 21–23, 26. Dr. Geier based his opinion on the assumption that Diane had experienced the seizures described by the petitioners. *Id.* at ¶¶ 23, 28. He did not express an opinion based on evidence entirely independent of petitioners' affidavits.

The petitioners also submitted the opinion of Marcel Kinsbourne, M.D., a pediatric neurologist. Dr. Kinsbourne found, based on the records and the affidavits of the petitioners, that there were no "events within Table Time that could be interpreted as indicating ... seizures, either by Table definition or based on my own medical knowledge." Letter from Kinsbourne to Ronan, 10/24/94.

After numerous orders by the special master to submit corroborating evidence and after the petitioners failed to submit such evidence, their claim was dismissed on June 6, 1997. The special master found that the petitioners did not meet the evidentiary requirements of the statute because they failed to corroborate their claim: "the court may not award compensation on the basis of the testimony of petitioners alone uncorroborated by medical records or opinion.... In this case, the factual claims are unsupported by medical records or by medical opinion." Decision, 6/6/97, at 2. As explained by the special master, this is the fatal flaw of the petitioners' case. *Id.*

■ The special master's finding is based on the failure of the petitioners to corroborate their contention that Diane experienced seizures. This contention is the keystone of their claim that Diane suffers from residual seizure disorder. The petitioners' principal expert, Dr. Geier, opined that Diane had experienced seizures and that the seizures occurred within three days of vaccination—a conclusion that, if based on independent testimony or medical records, could establish causation under § 300aa–11(c)(1)(C)(i) of the Vaccine Act. However, the special master found that the opinion of Dr. Geier was not sufficient to corroborate the petitioners' claim, because "[t]he factual basis of Dr. Geier's medical opinion rests solely on the allegations of the petitioners themselves." Decision, 6/6/97, at 2. We agree with this conclusion.[2]

## IV

The petitioners were required to substantiate their claims with independent evidence. Section 300aa–13(a)(1) provides that the special master may not award compensation "based on the claims of the petitioner alone, unsubstantiated by medical records or by medical opinion." The petitioners have submitted neither medical records nor medical opinion that substantiate their claim that their daughter suffered a seizure within table time or suffered from residual seizure disorder as a result of receiving the vaccine. In fact, the petitioners have offered no corrobo-

1. Petitioners filed an Amended Petition for Vaccine Compensation on August 24, 1992. The Amended Petition replaces only pages 4–5 of the original 77–page Petition and does not remedy the absence of corroboration discussed in text.

2. In *Buxkemper v. Secretary of the Dep't of Health and Human Servs.,* 32 Fed. Cl. 213, 221 (1994),

another judge of this court held that medical reports and medical opinions which rely solely on the claims of a petitioner do not meet the requirements of § 300aa–13(a)(1) and thus are "insufficient to demonstrate that [a child] suffered an injury within [three days] of the administration of the DPT vaccine."

rating evidence that Diane ever suffered a seizure.

Although Dr. Geier concluded that Diane Lett experienced seizures, he based his opinion exclusively on the statements of the petitioners. Because of this, his opinion cannot constitute a "medical opinion" to corroborate petitioners' claim as required by § 300aa–13(a)(1) of the Vaccine Act.

We conclude that when there is no mention of a seizure in any health record and when the only evidence of a seizure rests on the statements of the petitioners, the requirements of § 300aa–13(a)(1) of the Vaccine Act are not met.

## V

Based on the foregoing, the master's decision filed June 6, 1997 to dismiss the petition is AFFIRMED. Accordingly, it is ORDERED that judgment be entered in favor of respondent. Each party shall bear its own costs.